FILED
2017 Sep-19 PM 03:28
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA NORTHEASTERN DIVISION**

| | | |
|---|---|---|
| **SANJAY KUMAR RAJPUT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **Civil Action No. ________________** |
| **EQUIFAX, INC.,** | ) | **CLASS ACTION** |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

COMES NOW, Sanjay Kumar Rajput, Plaintiff in the above-styled action, files his Complaint both individually and on behalf of a class of similarly-situated individuals against the Defendant Equifax, Inc. (hereinafter, "Equifax"), and, in support thereof, show as follows:

### INTRODUCTION

1. Plaintiff files this Complaint as a national class action on behalf of over 140 million consumers across the country harmed by Equifax's failure to secure and safeguard consumers' personally identifiable information which Equifax collected from various sources in connection with the operation of its business as a consumer credit reporting agency, and for failing to provide timely, accurate and adequate notice to Consumer Plaintiff and other Class members that

their information had been stolen and precisely what types of information were stolen.

2. Equifax has acknowledged that a cybersecurity incident ("Data Breach") potentially impacting approximately 143 million U.S. consumers. It has also acknowledged that unauthorized persons exploited a U.S. website application vulnerability to gain access to certain files. Equifax claims that based on its investigation, the unauthorized access occurred from mid-May through July 2017. The information accessed primarily includes names, Social Security numbers, birth dates, addresses, and, in some instances, driver's license numbers. In addition, Equifax has admitted that credit card numbers for approximately 209,000 U.S. consumers, and certain dispute documents with personal identifying information for approximately 182,000 U.S. consumers, were accessed.

3. Mr. Rajput paid $9.00 - $10.00 per month to Equifax for Equifax ID Patrol, an identity theft protection service, for approximately ten (10) years. Nevertheless, his personal information was accessed in the Data Breach. Despite his subscription, his information was no less vulnerable to the unauthorized theft.

## PARTIES

4. Plaintiff Sanjay Kumar Rajput is over the age of nineteen (19) and is a resident of Madison County, Alabama.

5. Equifax is a multi-billion-dollar Georgia corporation that provides

credit information services to millions of businesses, governmental units, and consumers across the globe. Equifax operates through various subsidiaries including Equifax Information Services, LLC, and Equifax Consumer Services, LLC aka Equifax Personal Solutions aka PSOL. Each of these entities acted as agents of Equifax or in the alternative, acted in concert with Equifax as alleged in this complaint.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because at least one Class member is of diverse citizenship from one defendant, there are more than 100 Class members, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.

7. This Court has personal jurisdiction over Defendant because it conducts business in Alabama and has sufficient minimum contacts with Alabama.

8. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred and/or emanated from this District, and because Defendant has caused harm to Class members residing in this District.

## FACTUAL ALLEGATIONS

9. Throughout the past year, Equifax collected and stored personal and

credit information from Mr. Rajput, including his social security number, birth date, home address, driver's license information, and credit card numbers.

10. Equifax ID Patrol, the service Mr. Rajput subscribed to, includes credit file monitoring and automated alerts of key changes to Equifax, Experian, and TransUnion credit reports. It also provides internet scanning of suspicious websites for subscribers' personal information.

11. Equifax owed a legal duty to consumers like Mr. Rajput to use reasonable care to protect their credit and personal information from unauthorized access by third parties. Equifax knew that its failure to protect Plaintiff's credit and personal information from unauthorized access would cause serious risks of credit harm and identify theft for years to come.

12. On September 7, 2017, Equifax announced for the first time that from May to July 2017, its database storing Mr. Rajput's credit and personal information had been hacked by unauthorized third parties, subjecting Plaintiff to credit harm and identify theft.

13. In an attempt to increase profits, Equifax negligently failed to maintain adequate technological safeguards to protect Mr. Rajput's information from unauthorized access by hackers.

14. Equifax knew and should have known that failure to maintain adequate technological safeguards would eventually result in a massive data breach.

15. Equifax could have and should have substantially increased the amount of money it spent to protect against cyber-attacks but chose not to.

16. Consumers like Mr. Rajput should not have to bear the expense caused by Equifax's negligent failure to safeguard their credit and personal information from cyber-attackers.

17. As a direct result of Equifax's negligence as alleged in this complaint, Plaintiff will suffer injury of loss to pay for third-party credit monitoring services he otherwise would not have to pay for.

18. Mr. Rajput hopes Equifax will use this massive data breach, and their subsequent lawsuit, as a teachable moment to finally adopt adequate safeguards to protect against this type of cyber- attack in the future.

19. The ramifications of Equifax's failure to keep Plaintiff's and Class members' data secure are severe.

20. The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority."[1] The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person."[2]

21. Personal identifying information ("PII") is a valuable commodity to identity thieves once the information has been compromised. As the FTC

---

[1] 17 C.F.R § 248.201 (2013).
[2] *Id.*

recognizes, once identity thieves have personal information, "they can drain your bank account, run up your credit cards, open new utility accounts, or get medical treatment on your health insurance."[3]

22. Identity thieves can use personal information, such as that of Plaintiff and Class members which Equifax failed to keep secure, to perpetrate a variety of crimes that harm victims. For instance, identity thieves may commit various types of government fraud such as: immigration fraud; obtaining a driver's license or identification card in the victim's name but with another's picture; using the victim's information to obtain government benefits; or filing a fraudulent tax return using the victim's information to obtain a fraudulent refund.

23. Javelin Strategy and Research reports that identity thieves have stolen $112 billion in the past six years.[4]

24. Reimbursing a consumer for a financial loss due to fraud does not make that individual whole again. On the contrary, identity theft victims must spend numerous hours and their own money repairing the impact to their credit. After conducting a study, the Department of Justice's Bureau of Justice Statistics ("BJS") found that identity theft victims "reported spending an average of 7 hours

---

[3] Federal Trade Commission, *Warning Signs of Identity Theft*, available at: https://www.consumer.ftc.gov/articles/0271-warning-signs-identity-theft (last visited April 10, 2017).

[4] *See* https://www.javelinstrategy.com/coverage-area/2016-identity-fraud-fraud-hits0inflection-point (last visited April 10, 2017).

clearing up the issues" and resolving the consequences of fraud in 2014.[5]

25. There may be a time lag between when harm occurs versus when it is discovered, and also between when personally identifying information is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[6]

26. Plaintiff and Class members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. The Class is incurring and will continue to incur such damages in addition to any fraudulent use of their personally identifying information.

27. The PII of Plaintiff and Class members is private and sensitive in nature and was left inadequately protected by Equifax. Equifax did not obtain Plaintiff's and Class members' consent to disclose their PII to any other person as required by applicable law and industry standards.

28. Plaintiff subscribed to Equifax ID Patrol for approximately ten (10)

---

[5] Victims of Identity Theft, 2014 (Sept. 2015) available at: http://www.bjs.gov/content/pub/pdf/vit14.pdf last visited April 10, 2017).

[6] GAO, Report to Congressional Requesters, at 29 (June 2007), available at http://www.gao.gov/new.items/d07737.pdf (last visited April 10, 2017).

years. This service includes credit file monitoring and automated alerts of key changes to consumers' Equifax, Experian, and TransUnion credit reports and internet scanning of suspicious websites for personal information. ID Patrol, according to Equifax's website, will "help [you] better protect yourself and monitor the credit you've worked hard to earn."

29. Despite this extra layer of protection, Plaintiff's PII was accessed and potentially disseminated to unauthorized individuals for fraudulent use.

30. The Equifax Data Breach was a direct and proximate result of Equifax's failure to properly safeguard and protect Plaintiff's and Class members' PII from unauthorized access, use, and disclosure, as required by various state and federal regulation, industry practices, and the common law, including Equifax's failure to establish and implement appropriate administrative, technical, and physical safeguards to ensure the security and confidentiality of Plaintiff's and Class members' PII to protect against reasonably foreseeable threats to the security or integrity of such information.

31. Equifax had the resources to prevent a breach, but neglected to adequately invest in data security, despite the growing number of well-publicized data breaches.

32. Had Equifax remedied the deficiencies in its data security systems, followed security guidelines, and adopted security measures recommended by

experts in the field, Equifax would have prevented the Data Breach and, ultimately, the theft of its customers' PII.

33. Equifax's wrongful actions and inaction directly and proximately caused the theft and dissemination into the public domain of Plaintiff's and Class members' PII, causing them to suffer economic damages and other actual harm for which they are entitled to compensation, including:

a) Theft of their personal and financial information;

b) Unauthorized charges on their debit and credit card accounts;

c) The imminent and certainly impending injury flowing from potential fraud and identity theft posed by their PII being placed in the hands of criminals and already misused via the sale of Plaintiff's and Class members' information on the black market;

d) The untimely and inadequate notification of the Data Breach;

e) The improper disclosure of their PII;

f) Loss of privacy;

g) Ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach;

h) Ascertainable losses in the form of deprivation of the value of their PII, for which there is a well-established national and international

market;

i) Ascertainable losses in the form of the loss of cash back or other benefits as a result of their inability to use certain accounts and cards affected by the Data Breach;

j) Loss of use of and access to their account funds and costs associated with the inability to obtain money from their accounts or being limited in the amount of money they were permitted to obtain from their accounts, including missed payments on bills and loans, late charges and fees; and adverse effects on their credit including adverse credit notations; and

k) The loss of productivity and value of their time spent to address, attempt to ameliorate, mitigate and deal with the actual and future consequences of the data breach, including finding fraudulent charges, cancelling and reissuing cards, purchasing credit monitoring and identity theft protection services, imposition of withdrawal and purchase limits on compromised accounts, and the stress, nuisance and annoyance of dealing with all such issues resulting from the Data Breach.

34. Plaintiff seeks relief on behalf of himself and as representative of all others who are similarly situated. Pursuant to FED. R. CIV. P. 23(a), (b)(2), (b)(3)

and (c)(4), Plaintiff seeks certification of a Nationwide class defined as follows:

> All persons residing in the United States whose personally identifiable information was acquired by unauthorized persons in the data breach announced by Equifax in September 2017 who were also subscribers to Equifax's ID Patrol (the "Nationwide Class").

35. Excluded from each of the above Classes are Equifax and any of its affiliates, parents or subsidiaries; all employees of Equifax; all persons who make a timely election to be excluded from the Class; government entities; and the judges to whom this case is assigned and their immediate family and court staff.

36. Plaintiff hereby reserves the right to amend or modify the class definition with greater specificity or division after having had an opportunity to conduct discovery.

37. Each of the proposed Classes meets the criteria for certification under FED. R. CIV. P. 23(a), (b)(2), (b)(3) and (c)(4).

38. **Numerosity. Fed. R. Civ. P. 23(a)(1).** Consistent with Rule 23(a)(1), the members of the Class are so numerous and geographically dispersed that the joinder of all members is impractical. While the exact number of Class members is unknown to Plaintiff at this time, the proposed Class include at least 143 million individuals whose PII was compromised in the Equifax Data Breach. Class members may be identified through objective means. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, internet

postings, and/or published notice.

39. **Commonality. Fed R. Civ. P. 23(a)(2) and (b)(3).** Consistent with Fed. R. Civ. P. 23(2)(2) and with 23(b)(3)'s predominance requirement, this action involves common questions of law and fact that predominate over any questions affecting individual Class members. The common questions include:

a) Whether Equifax had a duty to protect PII;

b) Whether Equifax knew or should have known of the susceptibility of their data security systems to a data breach;

c) Whether Equifax's security measures to protect their systems were reasonable in light of the measures recommended by data security experts;

d) Whether Equifax was negligent in failing to implement reasonable and adequate security procedures and practices;

e) Whether Equifax's failure to implement adequate data security measures allowed the breach to occur.

f) Whether Equifax's conduct, including their failure to act, resulted in or was the proximate cause of the breach of its systems, resulting in the loss of PII of Plaintiff and Class members;

g) Whether Plaintiff and Class members were injured and suffered damages or other acceptable losses because of Equifax's failure to reasonably protect its POS systems and data network; and

h) Whether Plaintiff and Class members are entitled to relief.

40. **Typicality. Fed. R. Civ. P. 23(a)(3).** Consistent with Fed. R. Civ. P. 23(a)(3), Plaintiff's claims are typical of those of other class members. Plaintiff had their PII compromised in the Data Breach. Plaintiff's damages and injuries are akin to other Class members and Plaintiff seeks relief consistent with the relief of the Class.

41. **Adequacy. Fed. R. Civ. P. 23(a)(4).** Consistent with Fed. R. Civ. P. 23(a)(4), Plaintiff is an adequate representative of the Class because Plaintiff is a member of the Class and is committed to pursuing this matter against Equifax to obtain relief for the Class. Plaintiff has no conflicts of interest with the Class. Plaintiff's Counsel are competent and experienced in litigating class actions, including privacy litigation. Plaintiff intends to vigorously prosecute this case and will fairly and adequately protect the Class' interests.

42. **Superiority. Fed. R. Civ. P. 23(b)(3).** Consistent with Fed. R. Civ. P. 23(b)(3), a class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The quintessential purpose of the class action mechanism is to permit litigation against wrongdoers even when damages to an individual Plaintiff may not be sufficient to justify individual litigation. Here the damages suffered by Plaintiff and the Class are relatively small

compared to the burden and expense required to individually litigate their claims against Equifax, and thus, individual litigation to redress Equifax's wrongful conduct would be impracticable. Individual litigation by each Class member would also strain the court system. Individual litigation creates the potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

43. **Injunctive and Declaratory Relief.** Class certification is also appropriate under Fed. R. Civ. P. 23(b)(2) and (c). Defendant, through its uniform conduct, has acted or refused to act on grounds generally applicable to the Class as a whole, making injunctive and declaratory relief appropriate to the Class as a whole.

44. Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

a) Whether Equifax failed to timely notify the public of the Breach;

b) Whether Equifax owed a legal duty to Plaintiff and the Class to exercise due care in collecting, storing, and safeguarding their PII;

c) Whether Equifax's security measures were reasonable in light of data security recommendation, and other measures recommended by data security experts;

d) Whether Equifax failed to adequately comply with industry standards amounting to negligence;

e) Whether Defendant failed to take commercially reasonable steps to safeguard the PII of Plaintiff and the Class members; and

f) Whether adherence to data security recommendations and measures recommended by data security experts would have reasonably prevented the Data Breach.

45. Finally, all members of the proposed Classes are readily ascertainable. Equifax has access to information regarding the Data Breach, the time period of the Data Breach, and which individuals were potentially affected. Using this information, the members of the Class can be identified and their contact information ascertained for the purposes of providing notice to the Class. This is proven by the fact that Equifax has set up a website which allows customers to ascertain whether they are subject to the Data Breach as alleged above. Hence, Equifax may not now assert that identification of the Class members is impossible.

## CAUSES OF ACTION

### Count I
### Negligence

**(On behalf of Plaintiff and the Nationwide Class, or, Alternatively, Plaintiff and the Separate Statewide Classes)**

46. Plaintiff restates and realleges Paragraphs 1 through 44 as if fully set forth herein.

47. Upon accepting and storing the PII of Plaintiff and Class Members in its computer systems and on its networks, Equifax undertook and owed a duty to Plaintiff and Class members to exercise reasonable care to secure and safeguard that information and to use commercially reasonable methods to do so. Equifax knew that the PII was private and confidential and should be protected as private and confidential.

48. Equifax owed a duty of care not to subject Plaintiff, along with his PII, and Class members to an unreasonable risk of harm because they were foreseeable and probable victims of any inadequate security practices.

49. Equifax owed numerous duties to Plaintiff and to members of the Nationwide Class, including the following:

a) To exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting and protecting PII in its possession;

b) To protect PII using reasonable and adequate security procedures and systems that are compliant with industry-standard practices; and

c) To implement processes to quickly detect a data breach and to timely act on warnings about data breaches.

50. Equifax also breached its duty to Plaintiff and the Class members to adequately protect and safeguard PII by knowingly disregarding standard information security principles, despite obvious risks, and by allowing unmonitored and unrestricted access to unsecured PII. Furthering their dilatory practices, Equifax failed to provide adequate supervision and oversight of the PII with which they were and are entrusted, in spite of the known risk and foreseeable likelihood of breach and misuse, which permitted and unknown third party to gather PII of Plaintiff and Class members, misuse the PII and intentionally disclose it to others without consent.

51. Equifax knew, or should have known, of the risks inherent in collecting and storing PII, the vulnerabilities of its data security systems, and the importance of adequate security. Equifax knew about numerous, well-publicized data breaches, including the breach at Experian.

52. Equifax knew, or should have known, that their data systems and networks did not adequately safeguard Plaintiff's and Class members' PII.

53. Equifax breached its duties to Plaintiff and Class members by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard PII of Plaintiff and Class members.

54. As a direct and proximate result of Equifax's conduct, Plaintiff and the Class suffered damages including, but not limited to: damages arising from the

unauthorized charges on their debit or credit cards or on cards that were fraudulently obtained through the use of the PII of Plaintiff and Class members; damages arising from Plaintiff's inability to use his debit or credit cards because those cards were cancelled or otherwise rendered unusable as a result of the Data Breach and/or false or fraudulent charges stemming from the Data Breach, including, but not limited to late fee charges and foregone cash back rewards; damages from lost time and effort to mitigate the actual and potential impact of the Data Breach on their lives including, inter alia, by placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, closing or modifying financial accounts, closely reviewing and monitoring their credit reports and accounts for unauthorized activity, and filing police reports and damages from identity theft, which may take months if not years to discover and detect, given the far-reaching, adverse and detrimental consequences of identity theft and loss of privacy. The nature of other forms of economic damage and injury may take years to detect, and the potential scope can only be assessed after a thorough investigation of the facts and events surrounding the theft mentioned above.

**Count II**
**Negligence Per Se**
**(On Behalf of Plaintiff and the Nationwide Class, or, Alternatively, Plaintiff and the Separate Statewide Classes)**

55. Plaintiff restates and realleges Paragraphs 1 through 44 as if fully set forth herein.

56. Section 5 of the Federal Trade Commission ("FTC") Act prohibits "unfair… practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Equifax, of failing to use reasonable measures to protect PII. The FTC publications and orders described above also form part of the basis of Equifax's duty in this regard.

57. Equifax violated Section 5 of the FTC Act by failing to use reasonable measures to protect PII and not complying with applicable industry standards, as described in detail herein. Equifax's conduct was particularly unreasonable given the nature and amount of PII it obtained and stored, and the foreseeable consequences of a data breach at a corporation such as Equifax, including, specifically, the immense damages that would result to Plaintiff and Class members.

58. Equifax's violation of Section 5 of the FTC Act constitutes negligence *per se*.

59. Plaintiff and Class members are within the class of persons the FTC Act was intended to protect.

60. As a direct and proximate result of Equifax's negligence *per se*, Plaintiff and the Class have suffered, and continue to suffer, injuries and damages arising from Plaintiff's inability to use their debit or credit cards because those cards were cancelled or otherwise rendered unusable as a result of the Data Breach

and/or false or fraudulent charges stemming from the Data Breach, including, but not limited to late fee charges and foregone cash back rewards; damages from lost time and effort to mitigate the actual and potential impact of the Data Breach on their lives including, inter alia, by placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, closing or modifying financial accounts, closely reviewing and monitoring their credit reports and accounts for unauthorized activity, and filing police reports and damages from identity theft, which may take months if not years to discover and detect, given the far-reaching, adverse and detrimental consequences of identity theft and loss of privacy.

**Count III**
**Willful Violation of the Fair Credit Reporting Act**
**("FCRA")**
**(On Behalf of Plaintiff and the Nationwide Class, or, Alternatively, Plaintiff and the Separate Statewide Classes)**

61. Plaintiff restates and realleges Paragraphs 1 through 44 as if fully set forth herein.

62. As individuals, Plaintiff and Class members are consumers entitled to the protections of the FCRA. 15 U.S.C. § 1681a(c).

63. Under the FCRA, a "consumer reporting agency" is defined as "any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating

consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties…" 15 U.S.C. § 1681a(f).

64. Equifax is a consumer reporting agency under FCRA because, for monetary fees, it regularly engages in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties.

65. As a consumer reporting agency, the FCRA requires Equifax to "maintain reasonable procedures designed to… limit the furnishing of consumer reports to the purposes listed under section 1681B of this title." 15 U.S.C. § 1681e(a).

66. Under the FCRA, a "consumer report" is defined as "any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for (a) credit… to be used primarily for personal, family, or household purposes;… or (c) any other purpose authorized under section 1681b of this title." 15 U.S.C. § 1681a(d)(1). The compromised data was a consumer report under the FCRA because it was a communication of information bearing on Class members' credit worthiness, credit

standing, credit capacity, character, general reputation, personal characteristics, or mode of living used, or expected to be used or collected in whole or in part, for the purpose of serving as a factor in establishing the Class members' eligibility for credit.

67. As a consumer reporting agency, Equifax may only furnish a consumer report under the limited circumstances set forth in 15 U.S.C. § 1681b, "and no other." 15 U.S.C. § 1681b(a). None of the purposes listed under 15 U.S.C. § 1681b permit credit reporting agencies to furnish consumer reports to unauthorized or unknown entities, or computer hackers such as those who accessed the Nationwide Class members PII. Equifax violated § 1681b by furnishing consumer reports to unauthorized or unknown entities or computer hackers, as detailed above.

68. Equifax furnished the Nationwide Class members' consumer reports by disclosing their consumer reports to unauthorized or unknown entities or computer hackers to access their consumer reports; knowingly and/or recklessly failing to take security measures that would prevent unauthorized entities or computer hackers from accessing their consumer reports; and/or failing to take reasonable security measures that would prevent unauthorized entities or computer hackers from accessing their consumer reports.

69. Equifax willfully and/or recklessly violated § 1681b and § 1681e(a)

by providing impermissible access to consumer reports and by failing to maintain reasonable procedures designed to limit the furnishing of consumer reports to the purposes outlined under section 1681b of the FCRA. The willful and reckless nature of Equifax's violations are supported by, among other things, former employees' admissions that Equifax's data security practices have deteriorated in recent years and Equifax's numerous other data breaches in the past. Further, Equifax touts itself as an industry leader in breach prevention; thus, Equifax was well aware of the importance of the measures organizations should take to prevent data breaches and willingly failed to take them.

70. Equifax also acted willfully and recklessly because it knew or should have known about its legal obligations regarding data security and data breaches under the FCRA. These obligations are well established in the plain language of the FCRA and in the promulgations of the Federal Trade Commission. *See, e.g.*, 55 Fed. Reg. 18804 (May 4, 1990), 1990 Commentary On The Fair Credit Reporting Act. 16 C.F.R. Part 600, Appendix To Part 600, Sec. 607 2E. Equifax obtained or had available these and other substantial written materials that apprised them of their duties under the FCRA. Any reasonable consumer reporting agency knows or should know about these requirements. Despite knowing of these legal obligations, Equifax acted consciously in breaching known duties regarding data security and data breaches and depriving Plaintiff and other members of the Class of their rights

under FCRA.

71. Equifax's willful and/or reckless conduct provided a means for unauthorized intruders to obtain and misuse Plaintiff's and Nationwide Class members' personal information for no permissible purposes under the FCRA.

72. Plaintiff and the Nationwide Class members have been damaged by Equifax's willful or reckless failure to comply with the FCRA. Therefore, Plaintiff and each of the Nationwide Class members are entitled to recover "any actual damages sustained by the consumer… or damages of not less than $100 and not more than $1000." 15 U.S.C. § 1681n(a)(1)(A).

73. Plaintiff and the Nationwide Class members are also entitled to punitive damages, costs of the action, and reasonable attorneys' fees. 15 U.S.C. § 1681n(a)(2) & (3).

**Count IV**
**Negligent Violation of the Fair Credit Reporting Act**
**(On Behalf of Plaintiff and the Nationwide Class, or, Alternatively, Plaintiff and the Separate Statewide Classes)**

74. Plaintiff restates and realleges Paragraphs 1 through 44 as if fully set forth herein.

75. Equifax was negligent in failing to maintain reasonable procedures designed to limit the furnishing of consumer reports to the purposes outlined under section 1681b of the FCRA. Equifax's negligent failure to maintain reasonable procedures is supported by, among other things, former employees' admissions

that Equifax's data security practices have deteriorated in recent years, and Equifax's numerous other data breaches in the past. Further, as an enterprise claiming to be an industry leader in data breach prevention, Equifax was well aware of the importance of the measures organizations should take to prevent data breaches, yet failed to take them.

76. Equifax's negligent conduct provided a means for unauthorized intruders to obtain Plaintiff's and Nationwide Class members' PII and consumer reports for no permissible purpose.

77. Plaintiff and the Nationwide Class members have been damaged by Equifax's negligent failure to comply with the FCRA. Therefore, Plaintiff and each of the Nationwide Class members are entitled to recover "any actual damages sustained by the consumer." 15 U.S.C § 1681o(a)(1).

78. Plaintiff and the Nationwide Class members are also entitled to recover their costs of the action, as well as reasonable attorneys' fees. 15 U.S.C. § 1681o(a)(2).

**Count V**
**Declaratory Judgement**
**(On Behalf of Plaintiff and the Nationwide Class, or, Alternatively, Plaintiff and the Separate Statewide Classes)**

79. Plaintiff restates and realleges Paragraphs 1 through 44 as if fully set forth herein.

80. As previously alleged, Plaintiff and Class members entered into an

implied contract that required Equifax to provide adequate security for the PII it collected from their payment card transactions. As previously alleged, Equifax owes duties of care to Plaintiff and Class members that require it to adequately secure PII.

81. Equifax still possesses PII pertaining to Plaintiff and Class members.

82. Equifax has made no announcement or notification that it has remedied the vulnerabilities in its computer data systems, and most importantly, its systems.

83. Accordingly, Equifax has not satisfied its contractual obligations and legal duties to Plaintiff and Class members. In fact, now that Equifax's lax approach towards data security has become public, the PII in its possession is more vulnerable than previously.

84. Actual harm has arisen in the wake of the Equifax Data Breach regarding Equifax's contractual obligations and duties of care to provide data security measures to Plaintiff and Class members.

85. Plaintiff, therefore, seeks a declaration that (a) Equifax's existing data security measures do not comply with its contractual obligations and duties of care and (b) in order to comply with its contractual obligations and duties of care, Equifax must implement and maintain reasonable security measures.

**Count VI**
**Violation of Alabama Deceptive Trade Practices Act**

**(ALA CODE 1975 § 8-19-1 *et seq*.)**

86. Plaintiff restates and realleges Paragraphs 1 through 44 as if fully set forth herein.

87. Plaintiff brings this claim on behalf of himself and the Alabama Subclass.

88. Defendant's misrepresentations, active concealment, and failures to disclose violated the Alabama Deceptive Trade Practices Act ("ADTPA") in that Defendant misrepresented that its services and products were of a particular standard, quality, and/or grade when they were of another (ALA. CODE § 8-19-5(7)).

89. As previously alleged, Plaintiff and Class members entered into an contract that required Equifax to provide adequate security for the PII it collected from their payment card transactions. As previously alleged, Equifax owes duties of care to Plaintiff and Class members that require it to adequately secure PII.

90. The foregoing acts and omissions of the Defendant were undertaken willfully, intentionally, and knowingly as part of its routine business.

91. Defendant's misrepresentations and omissions were material to Plaintiff Sanjay Kumar Rajput and members of the Alabama Subclass, such that a reasonable person would consider them important in deciding whether to purchase Defendant's service plans and products, and had Plaintiff and members of the

Alabama Subclass known the truth, they would have acted differently.

92. The conduct described herein has tremendous potential to be repeated where other consumers similarly-situated will be treated with the same unscrupulous, unethical, unfair and deceptive acts and practices.

93. Furthermore, as alleged above, Equifax's failure to secure consumers' PII violates the FTCA and therefore violates the ADTPA.

94. Equifax knew or should have known that its computer system and data security practices were inadequate to safeguard the PII of Plaintiff and Class members, deter hackers, and detect a breach within a reasonable time, and that the risk of a data breach was highly likely.

95. As a direct and proximate result of Equifax's violation of the ADTPA, Plaintiff and Class members suffered damages including, but not limited to: damages arising from the unauthorized charges on their debit or credit cards or on cards that were fraudulently obtained through the use of the PII of Plaintiff and Class Members; damages arising from Plaintiff's inability to use his debit or credit cards or accounts because those cards or accounts were cancelled, suspended, or otherwise rendered unusable as a result of the Data Breach and/or false or fraudulent charges stemming from the Data Breach, including but not limited to late fees, charges, and foregone cash back rewards; damages from lost time and effort to mitigate the actual and potential impact of the Data Breach on their lives

including, inter alia, by placing “freezes” and “alerts” with credit reporting agencies, contacting their financial institutions, closing or modifying financial accounts, closely reviewing and monitoring their credit reports and accounts for unauthorized activity, and filing police reports and damages from identity theft, which may take months if not years to discover and detect, given the far-reaching, adverse and detrimental consequences of identity theft and loss of privacy. The nature of other forms of economic damage and injury may take years to detect, and the potential scope can only be assessed after a thorough investigation of the facts and events surrounding the theft mentioned above.

96. Also as a direct result of Equifax’s knowing violation of the ADTPA, Plaintiff and Class members are entitled to damages as well as injunctive relief, including, but not limited to:

a) Ordering that Equifax engage third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Equifax’s systems on a periodic basis, and ordering Equifax to promptly correct any problems or issues detected by such third-party security auditors;

b) Ordering that Equifax engage third-party security auditors and internal personnel to run automated security monitoring;

c) Ordering that Equifax audit, test, and train its security personnel regarding

any new or modified procedures;

d) Ordering that Equifax segment PII by, among other things, creating firewalls and access controls so that if one area of Equifax is compromised, hackers cannot gain access to other portions of Equifax systems;

e) Ordering that Equifax purge, delete, and destroy in a reasonable secure manner PII not necessary for its provisions of services;

f) Ordering that Equifax conduct regular database scanning and securing checks;

g) Ordering that Equifax routinely and continually conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach; and

h) Ordering Equifax to meaningfully educate its customers about the threats they face as a result of the loss of their financial and personal information to third parties, as well as the steps Equifax customers must take to protect themselves.

97. Plaintiff brings this action on behalf of himself and Class Members for the relief requested above and for the public benefit in order to promote the public interests in the provision of truthful, fair information to allow consumers to make informed purchasing decisions and to protect Plaintiff and Class members and the public from Equifax's unfair methods of competition and unfair, deceptive,

fraudulent, unconscionable and unlawful practices. Equifax's wrongful conduct as alleged in this Complaint has had widespread impact on the public at large.

98. Plaintiff and Class members are entitled to a judgment against Equifax for actual and consequential damages, exemplary damages and attorneys' fees pursuant to the ADTPA, costs, and such other further relief as the Court deems just and proper.

**Count VII**
**Breach of Contract**

99. Plaintiff repeats and realleges paragraphs 1 through 44 as if fully set forth herein.

100. There was an agreement between the Parties for the Plaintiff to pay the Defendant a certain monthly fee for additional protection of their PII through Equifax's ID Patrol. (the "Contract").

101. Under the Contract, Defendant was to monitor Plaintiff's credit and send automated alerts upon any key changes to Plaintiff's Equifax, Experian, or TransUnion credit reports. Further, Defendant promised internet scanning of suspicious websites for Plaintiff's personal information.

102. Plaintiff performed under the terms of the Contract by paying monthly subscription fees.

103. Defendant breached the Contract the first time by failing to protect his information and breached the Contract the second time inasmuch as it did not

rectify the breach by failing to notify Plaintiff under the Contract as soon as information came available that PII had been compromised.

104. Defendant has failed and/or refused to perform under the Contract.

105. As a proximate and direct consequence of Defendant's breach of Contract, Plaintiff and the Class have suffered compensatory, and consequential damages.

**Count VIII**
**Fraud by Concealment**
**(Common Law)**

106. Plaintiff repeats and realleges paragraphs 1 through 44 as if fully set forth herein.

107. Plaintiff brings this claim on behalf of the class.

108. Equifax knew and should have known that failure to maintain adequate technological safeguards would eventually result in a massive data breach.

109. Equifax intentionally concealed and suppressed material facts concerning the Data Breach. As alleged in this Complaint, Defendant did not disclose the Data Breach for weeks after discovering it. Equifax's deliberate, secret deception left Plaintiff and members of the Class unable to take steps to protect their finances in a timely manner.

110. Plaintiffs and Class members reasonably relied upon Equifax's false

representations. They had no way of knowing that Equifax's representations were false and gravely misleading. As alleged herein, Plaintiff and Class members did not, and could not, unravel Equifax's deception on their own.

111. Equifax's false representations were material to consumers, because the non-disclosure of information regarding the Data Breach led to a delay in Plaintiff and Class members' ability to take steps to safeguard their identities.

112. Equifax had a duty to disclose the truth to consumers. They omitted and concealed facts that were material because they directly affect the value of Equifax. Defendant actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its data were not adequately protected, which perception would hurt the brand's image and cost Equifax money, and it did so at the expense of Plaintiff and Class members.

113. Accordingly, Equifax is liable to Plaintiff and Class members for damages in an amount to be proven at trial.

114. Equifax's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff and Class members rights and the representations that Equifax made to them, in order to enrich Equifax. Equifax's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be

determined according to proof.

115. Plaintiff pleads this count pursuant to the law of Georgia, where Equifax has its American headquarters, on behalf of all members of the Class. As necessary, and in the alternative, Plaintiff may allege sub-classes, based on the residences at pertinent times of members of the Class, to allege fraudulent concealment under the laws of states other than Georgia.

WHEREFORE, Plaintiff, individually and on behalf of all Class members proposed in this Complaint, respectfully request that the Court enter judgment in their favor and against Equifax as follows:

a) For an Order certifying the Classes, as defined herein, and appointing Plaintiff and their Counsel to represent the Nationwide Class, or in the alternative the separate Statewide Classes;

b) For equitable relief enjoining Equifax from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff' and Class members' PII, and from refusing to issue prompt, complete and accurate disclosures to the Plaintiff and Class members;

c) For equitable relief compelling Equifax to use appropriate cyber security methods and policies with respect to consumer data collection, storage and protection and to disclose with specificity to Class members the type of PII compromised;

d) For an award of damages, as allowed by law in an amount to be determined;

e) For an award of attorneys' fees costs and litigation expenses, as allowable by law;

f) For prejudgment interest on all amounts awarded; and

g) Such other and further relief as this court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiff demand a jury trial on all issues so triable.

Submitted this the 19th day of September, 2017.

s/ Eric J. Artrip
Eric J. Artrip (ASB-9673-I68E)
D. Anthony Mastando (ASB-0893-X32B)
MASTANDO & ARTRIP, LLC
301 Washington St., Suite 302
Huntsville, Alabama 35801
Phone: (256) 532-2222
Fax: (256) 513-7489
artrip@mastandoartrip.com
tony@mastandoartrip.com

**DEFENDANT TO BE SERVED VIA CERTIFIED MAIL**

Equifax, Inc.
Attn Prentice Hall Corporation System, Inc.
641 South Lawrence Street
Montgomery, AL 36104